UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:09-cr-29 |
| v. | ) | |
| | ) | Judge Mattice |
| PAPA D. MBODJI | ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant Papa Mbodji's Objection to Report and Recommendation [Court Doc. 22].

Defendant filed his Motion to Suppress [Court Doc. 16] which was referred to Magistrate Judge William B. Mitchell Carter. [Court Doc. 17]. Magistrate Judge Carter held an evidentiary hearing on Defendant's Motion to Suppress and issued his Report and Recommendation which recommended that Defendant's motion be denied [Court Doc. 21].

Defendant timely filed an objection to Magistrate Judge Carter's R&R [Court Doc. 22], and the Government timely responded. [Court Doc. 23].

The Court has now reviewed the entire record pertinent to the instant objection, and for the reasons described below, the Court will **ACCEPT** and **ADOPT** Magistrate Judge Carter's R&R and will **DENY** Defendant's Motion to Suppress.

## I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations 28 U.S.C. § 636(b)(1)(C).

## II. FACTS

Magistrate Judge Carter held an evidentiary hearing on Defendant's Motion to

Suppress on December 28, 2009, during which Eduardo Choate and Wayne Jackson testified. Mr. Choate was with the Bradley County Sheriff's Department when he encountered Defendant, and Mr. Jackson is a Special Agent with the Federal Bureau of Investigation. In his R&R, Magistrate Judge Carter recounted at some length the facts developed at the evidentiary hearing. (Court Doc. 21, R&R at 1-7). Defendant has not objected to the basic facts as outlined in Magistrate Judge Carter's R&R. Instead, the objections focus on the legal conclusions drawn from the facts, and Magistrate Judge Carter's findings in regards to those facts. Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Carter's R&R. (*Id.*) The Court will refer to the facts only as necessary to analyze the issues raised on objection.

III.   **ANALYSIS**

Defendant initially argued in his Motion to Suppress that the statements he made to agents should be suppressed as "fruit of the poisonous tree" because the vehicle search and seizure of funds in the vehicle violated the Fourth Amendment. (Court Doc. 16, Def.'s Mot. to Suppress at 1, 4.) On Objection, Defendant takes issue with the following specific factual findings by Magistrate Judge Carter: the finding that Defendant spent less than two minutes in the bathroom; the finding that Defendant gave Officer Choate permission to search the vehicle; the finding that there was no evidence that Defendant was ill when he purportedly gave consent to the search; the acceptance of Officer Choate's assumption that Defendant knew he could refuse permission for the search; and the finding that Defendant initially disclaimed a possessory interest in all of the money seized. (Court Doc. 22, Def.'s Objs. at 1-2.)

The Court perceives most of Defendant's objections as a general objection to Officer Choate's credibility. Some of these facts were not actual particularized findings by Magistrate Judge Carter and were not relied on to support his conclusion that the search was valid, but rather were parts of Officer Choate's testimony that Magistrate Judge Carter credited. The Court notes that Magistrate Judge Carter explicitly found Officer Choate to be a credible witness and that Defendant presented no evidence to rebut Officer Choate's testimony. (R&R at 10-11.) Under the circumstances, the Court can see no valid reason to disturb Magistrate Judge Carter's credibility determination as to Officer Choate.

In regards to Defendant's specific assertion that Magistrate Judge Carter erroneously found that Defendant gave consent to search the vehicle, the Court notes that there is no evidence in the record to support Defendant's claim that he refused to consent. During his testimony regarding the traffic stop, Officer Choate characterized Defendant as cooperative, kind, able to understand everything Officer Choate was saying during their interaction, and responsive to Officer Choate's questions. (R&R at 3-4.) Officer Choate testified that he asked Defendant for consent to search the vehicle for drugs, money, and compartments, and Defendant said yes. (*Id.* at 3.) Defendant then stood nearby while Officer Choate began to search the vehicle and, at one point, Officer Choate asked him if he knew anything about the rear seats. (*Id.* at 4.) Officer Choate testified that Defendant never objected to the search or withdrew his consent. (*Id.*) In the absence of any contrary evidence, the Court accepts Officer Choate's testimony that Defendant gave consent to search the vehicle and did not withdraw that consent.

In regards to Defendant's assertion that he may have been ill during the interaction and unable to give valid consent, the Court notes that Magistrate Judge Carter addressed

this argument in the R&R. (R&R at 11 n. 1.) Magistrate Judge Carter questioned the validity of this argument based on the fact that Defendant was not asserting that his consent was involuntary due to illness, but was rather asserting that he gave no consent. (*Id.*) Nonetheless, Magistrate Judge Carter addressed the argument and made several findings. (*Id.*) Magistrate Judge Carter found that Defendant was taken to the hospital and treated for hyperglycemia six hours after the traffic stop was initiated. (*Id.*) Magistrate Judge Carter also noted that Officer Choate's testimony indicated that Defendant was cooperative, did not state that he was ill, appeared to understand Officer Choate's questions, and merely seemed nervous. (*Id.*) Magistrate Judge Carter concluded that the hospital visit was temporally far removed from the time of consent, and that Defendant's demeanor did not suggest any illness or inability to understand at the time consent was given. (*Id.*)

The Court agrees with this analysis. There is no evidence in the record that Defendant was visibly ill during the traffic stop or that Officer Choate made any observations that would suggest that the Defendant was ill or had any impairment in judgment that would affect the validity of his consent. The Court assumes that Defendant's objection to Officer Choate's estimate of how long Defendant was in the bathroom may in some way relate to his allegations of giving involuntary consent due to illness, but the Court finds that this fact has little relevance, and the Court sees no cogent reason to reject Officer Choate's estimate.

In regards to Defendant's objection that Officer Choate incorrectly assumed that Defendant knew he could refuse consent, the Court again finds nothing in the record to suggest that there was any kind of communication barrier or that Defendant had any

difficulty understanding Officer Choate's questions because he is a foreigner.  In fact, it appears that Defendant and Officer Choate had a fairly routine exchange without any general signs of incomprehension on the part of the Defendant.  Officer Choate testified that some of Defendant's answers were very "bizarre and confusing," but there is no indication that Defendant could not understand any of the questions or was incapable of discerning Officer Choate's intention when he asked for consent to search the vehicle. (R&R at 3.)  Simply put, there is no evidence before the Court that Defendant's national origin would have affected his capacity to understand Officer Choate.  In addition, the Court notes that it would be unreasonable for Officer Choate to assume that any individual of foreign origin would not understand the concept of giving consent, especially after an exchange during which there were no apparent comprehension problems.

The Court concludes that Defendant's assertion that he did not give consent at all is not supported by the record or testimony at the evidentiary hearing.  Moreover, there is insufficient evidence to support Defendant's argument that he may have been ill or unable to comprehend the functional consequences of his consent.  Considering the absence of evidence that Defendant did not give consent or that the consent was involuntary, and in the face of evidence that Defendant comprehended Officer Choate's questions and intentions, the Court credits the testimony of Officer Choate and accepts and adopts the finding of Magistrate Judge Carter that Defendant gave valid consent to the search of the vehicle.  *See United States v. Canipe*, 569 F.3d 597, 602-03 (6th Cir. 2009) (consent must be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.").

As for Magistrate Judge Carter's brief statement that Defendant had previously

made statements waiving a possessory interest in the money, the Court finds that Defendant did waive an interest in the initial $576,414.00 found in the vehicle based on the signed waiver in the record. (Court Doc. 20-1.) Defendant now argues that he had a possessory interest in the $288,514.00 that was found in the vehicle after the waiver was signed. (Def.'s Objs. at 2.) Frankly, the Court does not understand the relevance of this objection. The Court can only perceive this as an objection to the fact that Magistrate Judge Carter apparently found the discrepancy between Defendant's signed waiver and his later statements to be suspicious. The Court does not perceive that Magistrate Judge Carter attributed any undue suspicion to this inconsistency that improperly affected his analysis of Defendant's Motion to Suppress, and Defendant's assertion that there was no inconsistency is largely irrelevant to the Court's determination of the validity of the vehicle search.

The Court concludes that none of Defendant's objections to Magistrate Judge Carter's findings relating to the search of the vehicle are valid. The Court further concludes that Officer Choate's search of the vehicle was proper.

Although not addressed in Defendant's Motion to Suppress or his Objection, the Court would note that it finds the Government's argument regarding the inapplicability of the "fruit of the poisonous tree" doctrine to be persuasive. (Court Doc. 19, Gov't Resp. at 6-9.) If the Court were to find that the search of the vehicle was invalid–which it does not–the Court would likely still reach the same conclusion due to the fact that Defendant is charged with a completely different crime than the crime that may have been associated with the money found and seized from the vehicle. Defendant's statements to Agent Shelton in his attempt to recover the money months later are temporally far removed from

the vehicle search and constitute a separate criminal episode. Therefore, the alleged statements by Defendant which form the basis for the charged crime are not controlled or affected by the Fourth Amendment analysis of the vehicle search. *See, e.g., United States v. Tab*, 259 F. App'x 684, 689 (6th Cir. 2007) (rejecting the "fruit of the poisonous tree" doctrine in the context of a separate crime committed during an unconstitutional search).

Accordingly, the Court accepts Magistrate Judge Carter's recommendation and **DENIES** Defendant's Motion to Suppress in its entirety.

## VI. CONCLUSION

For the reasons stated herein, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Carter's R&R [Court Doc. 21]. Defendant's Objections [Court Doc. 22] are **OVERRULED**, and Defendant's Motion to Suppress [Court Doc. 16] is **DENIED**.

**SO ORDERED** this 28th day of May, 2010.

                                              */s/Harry S. Mattice, Jr.*
                                              HARRY S. MATTICE, JR.
                                              UNITED STATES DISTRICT JUDGE